## IN THE COURT OF APPEALS OF IOWA

No. 16-1791
Filed December 21, 2016

**IN THE INTEREST OF E.C., L.C., and N.C.,**
**Minor Children,**

**R.C., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Derek J. Johnson of Johnson & Bonzer, P.L.C., Fort Dodge, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher, Tofilon & Livingston, P.L.C., Fort Dodge, for minor children.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother[1] appeals the termination of her parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (f), (h) and (*l*) (2015). We review termination of parental rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

The mother does not challenge that grounds for termination exist,[2] but does assert the court should have allowed her an additional six months to seek reunification with her children. She also argues termination of her parental rights was not in the children's best interests.

The mother has three children: E.C., born September 2013; N.C., born September 2010; and L.C., born May 2009. The department of human services (DHS) was first involved in this family's life in May 2011 after it was alleged that both parents used methamphetamine while caring for L.C. and N.C. The same problems re-surfaced four years later in May 2015, when the parents were again using methamphetamine. The hair stat drug tests performed on the children on May 26, 2015, were positive for methamphetamine.

The children were removed from the physical custody of their parents on May 26, 2015, and were adjudicated children in need of assistance (CINA) on July 30, 2015. The concerns identified at that time were related to the parents' substance abuse, mental-health issues, and domestic abuse. The children remained out of the parents' custody after May 2015. There were no trial periods at home.

---

[1] The father's rights were also terminated. He does not appeal.
[2] When a parent does not dispute the grounds for termination of parental rights, we need not discuss the issue. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Both parents continued to relapse and use illegal substances during the pendency of the underlying CINA proceedings. The mother admitted substance use on May 14, July 10, July 20, and December 17, 2015, and in January and February 2016. She then left the state of Iowa and her whereabouts were unknown for some time. She had gone to New Mexico. In May 2016, the mother sought telephone contact with her children but L.C.'s therapist would not support the contact. The mother returned to Iowa in July 2016. She had a supervised visit with L.C. on August 4. The DHS social worker testified about this visit at the termination trial, stating:

> Yes, I staffed this with [L.C.]'s therapist and the GAL [guardian ad litem] in regards to initiating contact between the girls and [the mother]. We were starting out with [L.C.], because [L.C.] seems to be the one that struggles the most mental health wise and so we did do a visit, it did go very well. [L.C., then age seven] did struggle after the interaction. She went back to baby talk, she was crawling around like a baby. Her behaviors were so bad that her caretaker had to call her therapist on the weekend to ask what to do, because of [L.C.]'s behavior, it was just not like [L.C.] and she was worried that [L.C.] was having a mental breakdown at the time.

The child's therapist recommended no further contact with the mother until she had adequately dealt with her long-standing substance-abuse issues. The only contact the DHS worker had with the mother after that visit was by email.

The termination-of-parental-rights trial was held on September 7, 2016. The mother was not present for the trial. The mother's attorney reported the mother was living at a shelter in another county and was not able to get transportation. Counsel reported the mother was working through a temporary employment agency and also had a work conflict. The mother's attorney requested an additional six months to work toward reunification because the

mother was currently homeless and she needed to get substance-abuse treatment initiated again.

The DHS worker recommended termination of the mother's parental rights and reported the children were doing very well in their placements. L.C. was with an aunt. The other two children were with a grandmother. The children were bonded with their caretakers, who were willing to adopt the children. The worker testified, "I believe the girls should not have to wait for their parents to get their lives together, the girls have waited long enough. The girls need a safe and stable environment to grow up in and I believe that should happen as soon as possible for them." The GAL agreed, also recommending termination of parental rights to provide the children with stability.

The juvenile court denied the mother's request for additional time, finding "[t]here is nothing in the extended history of this case that allows the court to conclude that there is a reasonable likelihood that real change will occur that will eliminate the need for removal over the next six months." The court concluded termination of parental rights would best provide the children the security and stability they needed.

On our de novo review, we agree with the juvenile court that no extension of time is warranted. In August 2015, the mother had entered a residential treatment program. In September, she was participating in Family Treatment Court (FTC) and substance abuse treatment. Unfortunately, she chose to leave the program to move in with the father and began missing substance abuse treatment in November and December. On January 5, 2016, the mother went to

detox, stating she was using methamphetamine on a daily basis and alcohol on the weekends. The mother reported the father relapsed as well. The mother left inpatient treatment against staff recommendations on January 12. On January 21, the mother obtained another substance-abuse evaluation, but on January 29, she was discharged from FTC for failure to follow through with substance-abuse treatment, attend FTC, and maintain contact with the Family Safety, Risk, and Permanency provider. She then left the state and was not participating in services.

The mother remains unable to provide a safe and stable home to the children after more than fifteen months of the children being removed from her care. She was homeless at the time of the termination hearing. And while she reported attending substance-abuse meetings, she had not successfully completed substance-abuse treatment. Though we encourage the mother to continue seeking treatment, her past conduct does not bode well for future change. *See* Iowa Code § 232.104(2)(b) (stating an order granting additional time requires that the court "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"); *see also In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (citation omitted). The children are in good and stable placements where they are doing well. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (noting a child's pre-adoptive placement as a factor supporting termination under section 232.116(2)). Giving "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]," we conclude termination of parental rights and permanency is in the children's best interest. Iowa Code § 232.116(2). We therefore affirm.

**AFFIRMED.**